No. 35,248

GEORGE W. BROOKS, *Appellant,* v. THE NATIONAL BANK OF TOPEKA, Executor of the Estate of Henry K. Brooks, Deceased, et al., *Appellees.*

No. 35,249

THE UNITED STATES NATIONAL BANK OF DENVER, and ALBERT S. BROOKS, as Trustees, *Appellees,* v. THE BOARD OF CONTROL, THE NATIONAL BANK OF TOPEKA et al., *Defendants;* GEORGE W. BROOKS, *Appellant.*

(113 P. 2d 1069)

Opinion filed June 7, 1941.

*Ira C. Snyder,* of Manhattan, and *Robert Stone,* of Topeka, for the appellant.

*Ed Rooney, Jacob A. Dickinson* and *John E. Kirk,* all of Topeka, for the appellees.

The opinion of the court was delivered by

SMITH, J.: These two actions were tried in different divisions of the district court of Shawnee county, but involved the same facts and were consolidated here.

Action No. 35,248 was an action wherein the plaintiff sought to have a sheriff's deed and a quitclaim deed declared to be a mortgage. Judgment was entered pursuant to a stipulation. The plaintiff later filed a motion to set that judgment aside. This motion was overruled and the appeal is from the order overruling that motion.

Action No. 35,249 was brought to foreclose a lien on real estate that was provided for in the judgment entered in action 35,248. The defendant answered setting up substantially the facts that were contained in his motion to set aside the judgment in action 35,248.

These allegations were stricken from the answer on the motion of the plaintiffs and judgment entered for the plaintiffs. The defendant appeals from the judgment in that case and argues error on the part of the trial court in striking those allegations from his answer.

The facts in case 35,248 are as follows: After setting out the residence of the parties, the petition alleged that the United States National Bank of Denver and Albert S. Brooks were the trustees and the National Bank of Topeka was the executor of the estate of Henry K. Brooks. The petition then alleged that plaintiff had purchased certain real property for $50,000 and had paid $30,000 of this amount and given a mortgage for $20,000; that on June 23, 1932, an action had been commenced to foreclose this mortgage and a judgment was rendered and a sale was had in the foreclosure proceedings and the mortgagees were given a certificate of purchase; that Henry K. Brooks, the plaintiff's brother, advanced money to plaintiff so that this real estate could be redeemed, and to secure himself Henry took an assignment of the certificate of purchase from the mortgagees and also a quitclaim deed to the property in question and also an assignment of stock in some building and loan association in the amount of $2,150; that from the date of the foreclosure of the mortgage Henry Brooks received the income from the real estate up to his death on August 12, 1934, and after that the trustees and executors of his estate received it. The petition then alleged that this assignment and the quitclaim deed were intended to be mortgages only. The petition alleged that on August 12, 1934, Henry Brooks died testate, and under the terms of his will his property was transferred to the defendant Bank of Denver and Albert Brooks, another brother, as trustees to be held and administered for them; that about October 11, 1934, these trustees received the sheriff's deed to the real estate in question; that Edith Teresita Brooks-Krueger, the daughter and only heir of Henry Brooks, claimed some title and interest in the property; that the trustees took the title to the real estate in question subject to the rights of the plaintiff. The petition prayed that the sheriff's deed and the quitclaim deed be declared to be mortgages to secure the payment of the money advanced by Henry Brooks, and that the plaintiff be declared to be the legal and equitable owner of the real estate subject to these conveyances; that an accounting be had to determine the amounts due the trustees on account of the advancements made by Henry Brooks for plaintiff, and for other equitable relief.

Later this petition was amended by adding a cause of action charging that while Henry Brooks had been in charge of the real estate in question, which was a hotel, he had pulled out certain partitions and caused a garage to be installed next to the hotel, which damaged it in the amount of $5,000, and a third cause of action which charged that the plaintiff was the owner of all the furniture and furnishings in the hotel and that Henry Brooks had illegally taken possession of this furniture and was retaining it and that this had damaged plaintiff in the amount of $900. Due service was had upon all the defendants in this action. On three different occasions on application of the defendants an order extending the time for the defendants to plead was entered by the trial court. No answer was ever filed.

On April 27, 1936, the court made a journal entry finding that settlement had been made by the parties on all of the issues involved in the case and stating that the stipulation provided that the defendant trustees should have the legal title to the real estate in question and that the plaintiff should have the equitable title subject to a lien in the principal sum of $10,000, together with any other sums that might become due the trustees under the terms of the stipulation; that the $10,000 lien grew out of a debt owed the estate of Henry Brooks by George Brooks.

The stipulation was referred to and made a part of this judgment. The terms were as follows:

1. That the executor of the estate and the two trustees and Mr. and Mrs. Krueger should execute a quitclaim deed in favor of the plaintiff to the real estate in question; that this deed should be placed with the clerk of the district court of Shawnee county, who, upon satisfactory evidence of the compliance with the provisions of the stipulation, should deliver this deed to plaintiff or his heirs or assigns; that plaintiff might at any time before the expiration of five years from the date of the agreement pay the trustees the amount due them under its terms and the clerk could then deliver the deed to plaintiff.

2. That plaintiff should assign to the trustees all his title and interest in his shares of stock in the building and loan association.

3. That plaintiff should assign and agree to pay the $5,000 mortgage against the property in question in favor of either Roy P. or C. R. Forbes.

4. That the real estate in question should be impressed with a

lien of $10,000, together with such additional charges and expenses as might be set out in the stipulation.

5. That the title to the real estate should remain in the trustees until the payment of the amount due the trustees, and in the event this amount should not be paid within five years from the date of the judgment the quitclaim deed referred to should be returned to the trustees and they should have the right to sell and convey the real estate or as much of it as might be necessary to pay the sums due them without foreclosure action; that the balance of the proceedings of the sale might be paid to plaintiff or his heirs or assigns.

6. That the management and control of the property should be vested in a board of control consisting of the National Bank of Topeka and plaintiff himself and one other party, and that the unanimous consent of all three members to this board should be required in all matters pertaining to the management and control of the property; that the property should be kept insured and this board should have the right to collect the rents and pay the taxes and insurance and remodel the building, and in the event of the death, resignation or incapacity of any one of the board then the remaining two members were to select a third.

7. That the compensation for the members of the board should be paid by plaintiff.

8. That certain funds in the Bank of Topeka should be paid to this board.

9. That in the event the income from the property was insufficient to pay these charges the trustees would have unlimited right upon notice to sell and dispose of the property, either at private or public sale, and after deducting the amount due the trustees, deliver any balance remaining to plaintiff.

10. That the trustees shall coöperate with the board in securing the extension of the mortgage on the property in favor of Roy P. and Carrol R. Forbes in the amount of $5,000.

11. In the event that any ordinance in Topeka should require the removal of any improvements to be made on the real estate in question neither the Henry Brooks estate nor the trustees should be liable for any such expense.

12. That in the event the board had an opportunity to sell the property within the five-year period or if plaintiff desired to refinance the property the parties should coöperate in carrying this out.

The stipulation then contained the following provision:

"This stipulation, when properly executed by all of the parties hereto, shall constitute a full and complete settlement of any and all claims on the part of George W. Brooks against the Henry K. Brooks estate, the National Bank of Topeka, executor of said estate, the United States National Bank of Denver and Albert S. Brooks, trustees, and the heirs of said Henry K. Brooks, and this settlement shall also constitute a full and complete settlement of any and all claims on the part of the Henry K. Brooks estate, the National Bank of Topeka, executor of said estate, the United States National Bank of Denver and Albert S. Brooks, trustees, and the heirs of said Henry K. Brooks, against said George W. Brooks, except the $10,000, and such further or additional sums which may be due said trustees, as hereinabove set forth, covered by the lien against the Fifth Avenue hotel property as hereinbefore set forth."

This stipulation was signed by the plaintiff, by his lawyers, by the National Bank of Topeka, by Albert S. Brooks and the United States National Bank of Denver and Edith Teresita Brooks-Krueger.

On February 1, 1941, four years, nine months and six days after the date of entering of the judgment, the plaintiff filed a motion to vacate this judgment. He first referred to the judgment and stipulation and asked that it be vacated on the ground that it was void because while the action was pending he was old and weakened by worry and the victim of mental depression and that Albert Brooks, one of the trustees, intimidated him and threatened him that if he did not acknowledge he owed $10,000 to the estate of Henry Brooks he would have him prosecuted for perjury; that even though he knew himself to be innocent of any intention of wrongdoing, he was afraid he would be disgraced and sent to the penitentiary if he did not do as required, and that he brooded over this threat; that he refused to sign this stipulation until his attorney told him that Albert Brooks had given him the same information and that Albert Brooks, even though the defendants had not answered and there was no issue before the court and nothing for the court to decide, still demanded that he sign the stipulation, and that the will of plaintiff being wholly overcome and destroyed and being bereft of his free will he attached his name to the stipulation and directed his attorneys to approve it; that he did not learn of his mistaken belief until August 25, 1940, when he discussed the matter with another attorney; that defendants, having secured the void stipulation, went before the court and moved for judgment according to it, and that plaintiff, on account of his terror from the threats, refrained from informing the courts as to the manner in which the stipulation had been obtained; that the trial court had been deceived and was without knowledge of the fact that Albert S. Brooks was in control of

both sides of the litigation and made the journal entry in question without jurisdiction.

The motion set out that the judgment should be set aside because—

"1. There was no issue developed by the pleadings or otherwise, for decisions by the court.

"2. There was no trial or hearing or pretense of hearing; and no questions of fact or law was submitted to, or decided by the court.

"3. The journal entry shows upon its face that it was decided by, and written by the parties as a mere development of the void stipulation they had previously secured by duress.

"4. The only thing submitted to the court was a fully prepared journal entry and the stipulation on which it was based.

"5. The stipulation was an attempt to stipulate jurisdiction, and for that and other reasons was entirely void.

"6. The said journal entry was signed and entered without jurisdiction by the court and was void and of no effect.

"7. That said stipulation was signed by plaintiff under the influence of duress as above set forth, at a time when his will was completely overcome and was wholly controlled by the will of the said Albert S. Brooks, who really signed the said stipulation for plaintiff herein by substituting his own will for the will of this plaintiff."

The trial court, when this motion came on to be heard, held first that no evidence of duress would be admitted in support of the motion to vacate because duress was in the nature of fraud and the plaintiff had only two years from the entering of the judgment to file such a motion. The trial court later held that the judgment was not void and overruled the motion to vacate.

Action No. 35,249, as has been stated, was an action to foreclose the liens and mortgages that were referred to in the stipulation. The defendant in that action, George W. Brooks, who was the plaintiff in the action that has just been described, alleged in his answer substantially the same matters as he alleged in his motion to vacate. That matter was stricken from the answer, and judgment entered.

We shall discuss the situation with reference to No. 35,248, because the conclusion reached in that case will be decisive of the questions raised in the other case.

Appellant argues first that the judgment in case No. 35,248 is void, regardless of whether there was duress. He refers first to article 3, section 6 of the constitution, which provides as follows:

"The district courts shall have such jurisdiction . . . as may be provided by law."

He then points out that the legislature has provided for: Judgment by the court after full trial (G. S. 1935, 60-3117 to 60-3125); default judgments (G. S. 1935, 60-3109); judgments by confession (G. S. 1935, 60-3110 to 60-3116); judgment on agreed facts (G. S. 1935, 60-2938 to 60-2940); offer by defendant to allow judgment for a specific sum (G. S. 1935, 60-2936, 60-2937); declaratory judgments (G. S. 1935, 60-3127 to 60-3132); and judgment after trial by referees (G. S. 1935, 60-2922 to 60-2928).

He argues that no other judgments are provided for by our statutes; that this judgment did not comply with the provisions of any of those statutes—hence, was not provided for by law, and is therefore void.

Appellee argues that the statutes cited by appellant do not have the force in this case that he argues for them. The rule is well established that where a court has jurisdiction of the subject matter of the action and of the parties and has authority to grant the particular relief that was granted, the judgment is not void.

We shall examine the relief for which the plaintiff prayed in this case.

First, he prayed that the sheriff's deed and the quitclaim deed from him to Henry K. Brooks be declared mortgages to secure the payment of money advanced by Henry Brooks for him in redeeming the real estate in question from sale, and that the plaintiff be decreed to be the legal and equitable owner of that real estate and that his title be quieted. That is precisely the relief he was given by the judgment which he seeks to have this court hold void. The instruments were held to be mortgages and his title was quieted. Nobody argues that the district court of Shawnee county did not have jurisdiction to grant that relief. Nobody argues that the parties did not have jurisdiction of the subject matter of the action, which was the land and conveyances, and nobody argues but what the parties were all in court, and nobody argues but what the court had jurisdiction to give this precise relief, which was to declare these conveyances to be mortgages.

Next, he prayed for an accounting to determine the amount due the trustees of Henry Brooks for money expended in redeeming the real estate. In his petition in this case the appellant alleged that he did not know how much Henry Brooks had furnished, but stated that Henry Brooks "advanced sufficient moneys, the exact amount

of which plaintiff is unable to state, to redeem said real estate for plaintiff"—hence, he asked for an accounting. He had also alleged that Henry Brooks had been in possession of the property and had taken income and rents from it. This was clearly a case of an accounting, and nobody argues but what the district court of Shawnee county had authority to order an accounting. As the result of an accounting, the lien for $10,000 against the property about which appellant complains, could very well have been found to exist, also the claim that caused the assignment to the trustees of the building and loan stock. There does not seem to be any question about the $5,000 mortgage which the Forbes' had on the real estate in question. No one argues but what the trial court had jurisdiction to order such an accounting.

The other two causes of action where money judgment was claimed—nobody doubts but what the court had jurisdiction to award the money judgment or withhold it under the circumstances pleaded and as the facts might warrant.

Appellant urges that because there was no answer filed in this case and no evidence taken, the judgment is void. That is not the rule. G. S. 1935, 60-3110, clearly provides that a person against whom a cause of action exists may appear in a court of competent jurisdiction and agree to a judgment growing out of the matters pleaded in his petition. Appellant realizes that this is the statute, but points out that G. S. 1935, 60-3113, provides that there shall be an affidavit of the defendant filed stating briefly the facts upon which the indebtedness arose and that the amount of indebtedness is justly due and owing to the defendant. He points out that there was no such affidavit filed in this case and that without that affidavit the judgment is void. Even if that section applied to a case such as this, the fact that it was not strictly followed in taking this judgment would not render the judgment void. In *Smith v. State*, 64 Kan. 730, 68 Pac. 641, this court held that between the parties the failure to file this affidavit did not affect the validity of the judgment. The court stated—

"The judgment was not confessed in the technical manner provided in section 4856 of the General Statutes of 1901. It is conceded by counsel for plaintiffs in error that the statute cited has no application to the judgments in injunction suits. We regard the judgment complained of to have been rendered by consent, which estops the party consenting to its rendition from thereafter objecting to its validity. A judgment entered by confession, with-

out the filing of an affidavit, required by section 4854 of the General Statutes of 1901, is valid between the parties."

(See, also, *Manly v. Mayer*, 68 Kan. 377, 75 Pac. 550; also, *Baldwin v. Baldwin*, 150 Kan. 807, 96 P. 2d 614, and cases there cited.)

The judgment in this case provided for the appointment of a so-called board of control composed of a brother to appellant and a reputable lawyer and appellant himself. There might be a question as to whether the court had jurisdiction to appoint such a board. The appellant does, however, make no point of that in his brief, and if the court did not have jurisdiction to appoint such a board the fact that it did so would not render the entire judgment void. Furthermore, it does not appear from this record that the appointment of this board in any way prejudiced the appellant or hindered him in the management of his property or will hamper him in his efforts to redeem. We conclude, therefore, that this did not render the judgment void.

The next question is whether the duress pleaded by the appellant was sufficient to warrant the court in vacating this judgment. The trouble with that is, duress has been held to be a species of fraud. (See *Johnson v. Schrader*, 150 Kan. 545, 95 P. 2d 273.) As was said in that opinion, unless duress is a species of fraud the statutes do not provide any ground for vacating a judgment on account of it. If it is a species of fraud, then the action to vacate a judgment on account of it must be brought within two years of the rendition of judgment. (See G. S. 1935, 60-3007, subsection 4, 60-3008.) This motion was not filed for more than four years after the judgment was entered—hence, was too late.

The decision we have reached as to this case makes it unnecessary to discuss the questions with reference to the second case.

The judgment of the lower court is affirmed.

ALLEN, J., not sitting.